IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINGER GIOFFRE, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF BUCKS, ET AL., | : | |
| Defendants | : | NO. 08-4232 |

**MEMORANDUM**

GENE E.K. PRATTER, District Judge                                                                 NOVEMBER 2, 2009

Ginger Gioffre, as administrator for the estate of Jay Gioffre, Sr. and on behalf of his heirs, filed suit in September 2008 alleging that Mr. Gioffre was denied medical care at the Bucks County Correctional Facility and, as a result, died from complications from MSRA and withdrawal from narcotic drugs. Plaintiff has had the opportunity to amend her complaint several times. In previous motions to dismiss, there have been defense arguments that the complaint was weighted down by too much detail. Now, in response to the Fourth Amended Complaint ("Complaint"), which asserts a claim under 42 U.S.C. § 1983 for violations of Mr. Gioffre's Eighth and Fourteenth Amendment rights, a claim under the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8301, and a state law claim for medical negligence, Defendants Harris Gubernick and Terrance Moore argue that the Complaint lacks sufficient detail.[1] For the reasons that follow, the Motion to Dismiss is denied.

---

[1] Bucks County initially moved to dismiss the current Complaint, but has withdrawn its motion. See Oral Argument Tr. at 4. David Baechle has also withdrawn his motion to dismiss. See Doc. No. 62.

I. **STATEMENT OF ALLEGED FACTS**

Charged with parole violations, Jay Gioffre was committed to the Bucks County Correctional Facility ("BCCF") on September 21, 2006. Upon his arrival at BCCF, Mr. Gioffre already suffered from two serious conditions: a MSRA skin infection and withdrawal from narcotic drugs. From the date of Mr. Gioffre's admission to BCCF until his hospitalization nine days later, the Plaintiff claims that medical providers at the facility, "as a result of contact with Mr. Gioffre and/or information provided by other inmates and correctional officers, knew or should have known of [his] need for immediate medical care, but with deliberate indifference these defendants failed to provide necessary medical care." Compl. at ¶ 15.

The Complaint asserts that the failure to examine Mr. Gioffre or treat his medical conditions continued from September 21 through September 26. By September 26, Mr. Gioffre "was shaking, shivering, vomiting, and lying on the floor of his cell." Compl. ¶ at 19. From September 26 through September 29, Mr. Gioffre's conditions worsened. "By September 28-29, 2006, Mr. Gioffre was in a highly compromised and weakened state, unable to respond to questions, and suffering from severe headaches and dehydration, but defendant Davis and the defendant nurses . . . failed to provide necessary and proper treatment, notwithstanding that these defendants knew or should have known that Mr. Gioffre was unable to ingest necessary food and liquids and was becoming even more seriously ill." Compl. at ¶ 25.

On October 1, 2006, Mr. Gioffre was transferred to Doylestown Hospital "where he was admitted in critical condition with a diagnosis of MRSA endocarditis, dehydration, spontaneous bleeding and other complications." Compl. at ¶ 26. He died on October 6, 2006.

During the relevant time period, Defendant Gubernick was the Director of Corrections for BCCF, and Defendant Moore was the Warden for BCCF. Plaintiff asserts that the non-medical prison officials named in the suit had "established, tolerated or ratified a practice, policy or custom of failing to provide necessary medical care to inmates at BCCF . . . to avoid costs of necessary medication, treatment and hospitalization." Compl. at ¶ 29. Thus, the Complaint claims that Messrs. Defendants Gubernick and Moore "were on notice (by virtue of inmate complaints, court rulings, reports and other information) that medical services at BCCF failed to satisfy constitutional and professional standards." Id. at ¶ 30.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (confirming that Twombly applies to all civil cases).

3

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

## III. DISCUSSION

### A. An Inmate's Constitutional Right to Medical Care

The Eighth and Fourteenth Amendments entitle a sentenced inmate in a correctional facility to receive necessary medical care for serious medical conditions. Estelle v. Gamble, 429 U.S. 97 (1976). In order to make out a violation of the Eighth Amendment, Estelle requires a showing of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. Conditions that are life threatening or are so obvious that even a layperson would recognize the need for medical care are sufficiently serious. Monmouth County. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because

medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1990).

Against this general legal background, the Court will review the allegations against the movants.

### B.  Claims Against Harris Gubernick and Terrance Moore

Defendants Gubernick and Moore argue that they were insufficiently involved in Mr. Gioffre's constitutional injuries to be held liable under § 1983, and that even if such liability were appropriate, the claims are barred by the doctrine of qualified immunity.

#### 1.  Personal Involvement in Constitutional Violations

Individuals may not be found liable under § 1983 pursuant to a *respondeat superior* theory of liability. Polk County v. Dodson, 454 U.S. 312, 325 (1981). Rather, a defendant in a supervisory role "must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

To hold a supervisor liable on a deliberate indifference theory under § 1983, a plaintiff must demonstrate that either (1) the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's, or (2) the risk was "so great and so obvious" that the failure of the supervisor to respond alone supports a finding of deliberate indifference. Beers-Capitol v. Whetzel, 256 F.3d 120, 136-37 (3d Cir. 2001). Furthermore, when a prisoner is under medical supervision, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill

5

v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). A prison official's knowledge of a substantial risk to inmates may be proven by circumstantial evidence. Beers-Capitol, 256 F.3d at 131.

These supervisory officials here argue that the allegations against them amount to nothing more than formulaic recitations of the elements of supervisory liability and must, therefore, be disregarded. Gubernick/Moore Mot. at 10. Further, they argue that even if the allegations were deemed factual, these facts fail to establish that they were personally involved in Mr. Gioffre's alleged constitutional injuries. Id. at 11. Specifically, Defendants maintain that Plaintiff has alleged only that they established or implemented policies denying inmates adequate medical care and failed to properly train, supervise, monitor or discipline the medical staff. They argue that such allegations are insufficient to establish the supervisory liability of non-medical prison officials because Plaintiff fails to allege that Defendants had any actual knowledge of Mr. Gioffre's alleged constitutional injuries. Id. at 12.

With respect to Defendants, the Complaint alleges (1) that upon admission, Mr. Gioffre needed a medical examination, which he was not provided because of prison customs and policies, Compl. at ¶ 17; (2) that as of the date of Mr. Gioffre's admission, Defendants had established, tolerated or ratified a practice, custom or policy of failing to provide necessary medical care to inmates to "*avoid the costs of necessary medication, treatment and hospitalization*," id. at ¶ 29 (emphasis added); and (3) that Defendants were on notice of the constitutionally insufficient practices at BCCF because of "inmate complaints, court rulings, reports, and other information," id. at ¶ 30.

To be sure, this version of the Complaint lacks much detail. Plaintiff does not identify the precise practice or policy instituted by Defendants that created a substantial risk to inmates such

6

as Mr. Gioffre. Nor does Plaintiff provide details about the substance of the complaints, court rulings, and reports received by Defendants regarding the constitutionally insufficient practices at BCCF. Nevertheless, the Complaint alleges a problematic practice or policy, known to and ratified by Defendants, of denying medical care for cost-saving reasons. The Complaint also alleges that Defendants learned of these alleged unconstitutional conditions, but that with deliberate indifference, they failed to remedy the situation. See Monmouth County Corr. Institutional Inmates, 834 F.2d at 346 (delay in providing necessary medical treatment for non-medical reasons demonstrates deliberate indifference). These details regarding the motive for the practice or policy of denying inmates medical treatment and the means through which the Defendants learned of the unconstitutional conditions elevate the Complaint, perhaps only barely, from being merely a blanket, general assertion of entitlement to relief.

Defendants also rely heavily on two rulings issued by the late Honorable Clifford Scott Green of this Court, which were issued just before Mr. Gioffre's incarceration, granting summary judgment for the County of Bucks and various prison officials and employees in cases involving allegations of insufficient medical treatment of inmates held in Bucks County. See Graff v. County of Bucks, No. 03-1601, 2006 U.S. Dist. LEXIS 61816 (E.D.Pa. Aug. 29, 2006); Loch v. County of Bucks, No. 03-4833, 2006 U.S. Dist. LEXIS 62620 (E.D.Pa. Sept. 1, 2006). Defendants argue that because of these rulings, they had no reason to believe that the policies and practices at BCCF posed a substantial risk to Mr. Gioffre. Gubernick/Moore Mot. at 12, 19.

Defendants' reliance on Judge Green's decisions is misplaced. Those cases were decided at the summary judgment phase, after discovery had been pursued and all sought-after information marshalled. Moreover, it is also unclear whether the policies and practices in place when Mr.

7

Gioffre was an inmate were the same as those at issue in Graff and Loch, which involved a much earlier time period, as conceded by counsel at oral argument. Oral Argument Tr. at 11. In addition, the holdings in those cases were limited to the application of those policies to the medical conditions of the respective plaintiffs in those cases. See Graff, 2006 U.S. Dist. LEXIS 61816, at *11 (holding that "there exists no evidence to sustain a finding of any policy in place at BCCF to ignore the health needs of *Mr. Graff*.") (emphasis added); see Loch, 2006 U.S. Dist. LEXIS 62620, at *17 (holding that "there exists no evidence to sustain a finding of any policy or practice in place at BCCF that resulted in a violation of *Plaintiffs' constitutional rights*) (emphasis added).

Thus, the Court concludes that while the allegations as to Defendants are minimal and discovery eventually may establish that no such constitutionally impermissible practices or policies existed, the allegations are sufficient at this stage to put Defendants fairly on notice of the claims against them.

### 2. Doctrine of Qualified Immunity

The doctrine of qualified immunity shields government agents acting within the scope of their discretionary authority from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (internal citation and quotation omitted). "Qualified immunity operates to ensure that before they are subject to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

The Supreme Court has established a two-step test for determining whether a government agent's actions may be shielded from liability under the doctrine of qualified immunity. First, the

Court must consider whether the defendant's actions violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the Court must determine whether the constitutional right at issue, if violated, was clearly established in light of the specific factual circumstances of the particular case. Id. at 201-2. The Supreme Court has recently backed away from this rigid sequence, stating that "while the sequence set forth [in Saucier] is often appropriate, it should no long be regarded as mandatory." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). The Supreme Court further instructed that "district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. The Court will apply the Saucier framework to this case. See Id. ("Although we now hold that the Saucier protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial.").

As noted above, the Complaint states a claim for a constitutional violation under § 1983 based on practices and policies established and/or ratified by Messrs. Gubernick and Moore of denying necessary medical care to inmates, including Mr. Gioffre, for unjustified financial reasons. Further, Mr. Gioffre's constitutional right to medical care for serious medical needs while incarcerated was established long before Defendants' alleged conduct in this case. See Estelle v. Gamble, 429 U.S. 97 (1976).

The key issue for the purposes of qualified immunity, then, is whether Defendants' alleged conduct was objectively reasonable in this situation. See Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted.").

9

Defendants argue that even if Plaintiff has sufficiently pleaded a constitutional violation, the Court must dismiss the claims against them because they were not aware that their conduct was unlawful with respect to Mr. Gioffre. Defendants contend that, at most, this is a medical negligence case because it is undisputed that Mr. Gioffre was examined by medical professionals at BCCF and any claim regarding whether these examinations were adequate does not rise to the constitutional level. Defendants also argue that under Spruill, when an inmate is under the care of medical experts, non-medical prison officials like Defendants cannot be found to have been deliberately indifferent to plaintiff's medical needs unless they had reason to believe plaintiff was being mistreated.[2]

However, Plaintiff asserts claims against Defendants for their own actions and decisions regarding Mr. Gioffre's treatment, not simply for the decisions of the medical professionals that were responsible for treating Mr. Gioffre. Plaintiff alleges that Defendants established or ratified this policy or practice of mistreatment and, therefore, actually knew BCCF was denying necessary medical care to drug users, including Mr. Gioffre, for impermissible financial reasons. See Resp. at 13. Faced with such allegations of actual knowledge, non-medical prison officials are not automatically shielded from liability simply because the inmate was receiving some form of treatment from medical personnel. See Spruill, 372 F.3d at 236. Further, this is not a medical malpractice case about whether a certain treatment was proper; it is about the general failure to treat an inmate suffering from life-threatening medical conditions. Plaintiff claims that Mr.

---

[2] In support of their qualified immunity argument, these Defendants also rely on Judge Green's decisions as evidence that they had no reason to question whether BCCF's policies and practices posed a substantial risk of harm to Mr. Gioffre. As noted above, Judge Green's decisions are not dispositive in this case.

Gioffre essentially received no care at all until it was too late to save his life. Because Plaintiff has adequately pleaded allegations of deliberate indifference to Mr. Gioffre's health conditions through the policies and procedures known to Defendants, they are not entitled to the protection of qualified immunity at this stage in the litigation. See Beers-Capitol v. Whetzel, 256 F.3d at 142, 143 n.15 ("Because deliberate indifference . . . requires actual knowledge or awareness on the part of the defendant, a defendant cannot have qualified immunity if she was deliberately indifferent."); see also Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) (holding that if plaintiff succeeds in establishing defendants acted with deliberate indifference to plaintiff's constitutional rights, then defendant's conduct was not objectively reasonable and qualified immunity is not available).

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss. An appropriate Order will follow.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
